UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PEOPLES BANK SB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:16-cv-433 |
| | ) | |
| MAX ADVANCE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES the Plaintiff Peoples Bank SB, ("Peoples") an Indiana State Bank, by and through its attorneys, and for its Complaint against the Defendant Max Advance, LLC ("Max Advance"), states as follows:

## PARTIES

1. Peoples is an Indiana State Savings Bank and an Indiana Corporation with its principal place of business located in Munster, Indiana, County of Lake.

2. Max Advance is a New York limited liability company. Max Advance's principal place of business is located in Brooklyn, New York. Upon information and belief, all of Max Advance's members and its managing member are citizens of New York.

3. Non-party Portage Electric Supply Corporation (hereinafter "Portage Electric") is an Indiana Corporation with a principal place a business located in Portage, Indiana, County of Lake.

1

## JURISDICTION & VENUE

4. This Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. Section 1332(a)(1) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs and this controversy is between citizens of different states.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. 1391(b) (2) as a substantial part of the events or omissions giving rise to People's claims occurred within this district.

## FACTS COMMON TO ALL COUNTS

6. Beginning in 2012 and extending through 2016, Peoples extended credit and monies to Portage Electric in an amount exceeding $490,000.00 via various Business Loan Agreements and Promissory Notes, copies of which are attached hereto and made a part hereof as collective Exhibit A.

7. Portage Electric maintained a checking account at Peoples.

8. As security for Peoples extension of credit and monies to Portage Electric, Portage Electric executed a Security Agreement on September 14, 2012, which granted Peoples a security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric, a true and correct copy of which is attached hereto and made a part hereof as Exhibit B.

9. In furtherance of the foregoing grant of security interest, Peoples filed a UCC-1 Financing Statement with the Indiana Secretary of State on September 18, 2012, a true and correct copies of which is attached hereto and made a part hereof as Exhibit C.

10. The UCC-1 Financing Statement filed by People's was notice to the world that Peoples held a properly perfected security interest in the following collateral:

> All of debtor's assets now owned and hereinafter acquired including, without limitation, all accounts, inventory, equipment, general intangibles, documents, investment property, instruments, chattel paper and accounts receivable (as those terms are defined in the Indiana Uniform Commercial Code in effect on the date of this filing, or as amended or revised from time to time).

11. Portage Electric executed another Security Agreement on December 1, 2013 which granted Peoples another security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric, a true and correct copies of which is attached hereto and made a part hereof as Exhibit D.

12. Portage Electric executed another Security Agreement on October 1, 2015 which granted Peoples another security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric, a true and correct copies of which is attached hereto and made a part hereof as Exhibit E.

13. Based upon the executed Security Agreements with Portage Electric and by virtue of the properly filed UCC-1 Financing Statement attached hereto as Exhibit C, Peoples has maintained a properly perfected first-priority lien upon all of Portage Electric's accounts, assets and accounts receivable from September 18, 2012 through the present date (hereinafter referred to as the "Lien").

14. Unbeknownst to Peoples, in or about September, 2015, Portage Electric and Max Advance executed a "Purchase and Sale Agreement" whereby Portage Electric sold a percentage of its accounts receivable to Max Advance.

15. Unbeknownst to Peoples, in or about March, 2016, Portage Electric and Max Advance executed another "Purchase and Sale Agreement" whereby Portage Electric sold another percentage of its accounts receivable to Max Advance.

16. Beginning on October 1, 2015, Max Advance began to debit the checking account of Portage Electric on a monthly basis in the amount of $478.00 as a means of collecting Portage Electric's accounts receivable.

17. Upon information and belief, Max Advance performed an Indiana Uniform Commercial Code lien search prior to executing the "Purchase and Sale Agreements" with Portage Electric.

18. Peoples' Lien was reported on the Indiana Uniform Commercial Code lien searches performed by Max Advance prior to entering into the "Purchase and Sale Agreements" with Portage Electric.

19. Upon information and belief, in addition to having constructive knowledge of Peoples' Lien pursuant to Peoples' UCC-1 filing, Max Advance had actual knowledge of Peoples' Lien prior to entering into the "Purchase and Sale Agreements" with Portage Electric.

20. In the alternative, if Max Advance entered into the "Purchase and Sale Agreements" with Portage Electric without performing an Indiana Uniform Commercial Code lien search, it was grossly negligent for failing to do so.

21. Portgage Electric defaulted on its obligations to Peoples.

22. Max Advance confiscated $81,954.00 of Portage Electric's accounts receivable and assets in 2015 directly from Portage Electric's bank account located at Peoples.

4

23. Max Advance confiscated $50,010.00 of Portage Electric's accounts receivable and assets in 2016 directly from Portage Electric's bank account located at Peoples.

24. Max Advance has unlawfully converted and absconded with the collateral and assets available to satisfy Portage Electric's obligations to Peoples.

## COUNT I – CONVERSION – MAX ADVANCE

25. Peoples realleges and reasserts all previous paragraphs of this Complaint as if set forth fully herein.

26. Max Advance's continued control, dominion and ownership over Portage Electric's accounts receivable, assets and monies collected therefrom is unauthorized and wrongful as Peoples maintained a superior interest in such money and accounts receivable by virtue of its Lien.

27. At all times Peoples maintained a superior interest in Portage Electric's accounts receivable, assets and any and all proceeds collected therefrom.

28. Peoples has an absolute and unconditional right to the immediate possession of all Portage Electric's accounts receivable, assets and the money collected therefrom.

29. Peoples made demand upon Max Advance for the return of the accounts receivable, assets and all money collected therefrom; however, Max Advance has failed and/or refused to return them.

30. Max Advance acted willfully and/or with such gross negligence to indicate a wanton disregard of Peoples' rights to Portage Electric's accounts receivable, assets and any funds collected therefrom.

Wherefore, Peoples respectfully requests that this Court find that Max Advance converted Peoples' perfected security interest in Portage Electric's accounts receivable, assets and all monies collected therefrom for its own use; Order Max Advance to return all of Portage Electric's accounts receivable, assets and all money collected therefrom in the minimum amount of $131,964.00, along with interest thereon, to Peoples within five (5) days of the Court's order; and award Peoples punitive damages in an amount exceeding Peoples' reasonable attorney fees; and for all other relief that this Court deems just.

### COUNT II - BREACH OF IMPLIED BAILMENT – MAX ADVANCE

31. Peoples realleges and reasserts all previous paragraphs of this Complaint as if set forth fully herein.

32. Max Advance's dominion and control over Portage Electric's accounts receivable and assets created an implied bailment relationship between Peoples as bailor and Max Advance as bailee.

33. Max Advance's possession of Portage Electric's accounts receivable, assets and a minimum of $131,964.00 were held for Peoples' benefit and in trust pursuant to Peoples' Lien.

34. Peoples made demand upon Max Advance for the return of the accounts receivable, assets and all money collected therefrom; however, Max Advance has failed and/or refused to return them.

35. Max Advance was not entitled to retain Portage Electric's accounts receivable, assets and all money collected therefrom.

Wherefore, Peoples respectfully requests that this Court find that Max Advance breached the implied bailment and award Peoples damages in the amount of $131,964.00, plus prejudgment interest, and all other relief that this Court deems just.

### COUNT III - UNJUST ENRICHMENT – MAX ADVANCE

36. Peoples realleges and reasserts all previous paragraphs of this Complaint as if set forth fully herein.

37. Max Advance was enriched by Portage Electric's accounts receivable and assets which were subject to the Lien of Peoples pursuant to valid security agreements.

38. Max Advance was obligated to return Portage Electric's accounts receivable, assets and all monies collected therefrom to Peoples pursuant to the Lien.

39. Peoples has been impoverished by Max Advance's failure to return the foregoing accounts receivable, assets and monies.

40. In the alternative to the foregoing Counts, Peoples does not have a remedy provided by law to compel Max Advance to return the accounts receivable, assets and monies collected therefrom.

41. It would be inequitable for Max Advance to retain the benefit of Portage Electric's accounts receivable, assets and money collected therefrom.

Wherefore, Peoples respectfully requests that this Court impose a constructive trust on $131,964.00 of Max Advance's money, wherever situated; Order such monies paid to

7

Peoples as having a superior interest therein, and; for all other relief that this Court deems just.

Respectfully Submitted,

PEOPLES BANK, SB

By: /s/ Christian J. Jorgensen
     One of Its Attorneys

Christian J. Jorgensen, Esq.
Indiana Bar #24032-45
Illinois ARDC#6243203
Dressler | Peters, LLC
70 West Hubbard Street
Suite 200
Chicago, Illinois 60654
(312) 602-7365 Phone
(312) 637-9143 Facsimile
Jorgensen@dresslerpeters.com