**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| PEOPLES BANK SB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) NO. 2:16-CV-433 |
| MAX ADVANCE, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to
Dismiss for Lack of Personal Jurisdiction and Improper Venue
Pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3)
and/or 28 U.S.C. § 1406, filed by Defendant Max Advance, LLC on
January 23, 2017 (DE #13). For the reasons set forth below, the
motion to dismiss (DE #13) is **DENIED.**

BACKGROUND

Plaintiff Peoples Bank SB ("Plaintiff") filed its Complaint
against Defendant Max Advance, LLC ("Defendant") on October 7,
2016. (DE #1.) In response to the Complaint, Defendant moves to
dismiss based on lack of personal jurisdiction pursuant to Federal
Rule of Civil Procedure 12(b)(2) and improper venue; in the
alternative, Defendant moves to transfer the case to the United

States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (DE #13.) The motion is fully briefed and is ripe for adjudication.

DISCUSSION

Facts

Plaintiff is an Indiana State Savings Bank and an Indiana corporation with its principal place of business in Munster, Indiana. (DE #1, ¶1.) Defendant is a New York limited liability company, with its principal place of business in Brooklyn, New York, and its members and its managing member are citizens of New York. (*Id.*, ¶2.) Non-party Portage Electric Supply Corporation ("Portage Electric") is an Indiana corporation with its principal place of business in Portage, Indiana. (*Id.*, ¶3.)

Between 2012 and 2016, Plaintiff extended credit to Portage Electric in excess of $490,000 via various business loan agreements and promissory notes. (*Id.*, ¶6.) Portage Electric executed a series of security agreements which granted Plaintiff a security interest in "all inventory, chattel paper, accounts, equipment and general intangibles and accounts receivables" of Portage Electric. (*Id.*, ¶¶8, 11, 12.) Plaintiff filed a UCC-1 Financing Statement, notifying the world that it held a properly perfected security interest in the following collateral:

> All of debtor's assets now owned and hereinafter
> acquired including, without limitation, all accounts,
> inventory, equipment, general intangibles, documents,
> investment property, instruments, chattel paper and
> accounts receivable (as those terms are defined in the
> Indiana Uniform Commercial Code in effect on the date of
> this filing, or as amended or revised from time to time).

(*Id.*, ¶10.)

Plaintiff maintained a properly perfected first-priority lien upon all of Portage Electric's accounts, assets, and accounts receivable. (*Id.*, ¶13.) Unbeknownst to Plaintiff, Portage Electric sold a percentage of its accounts receivable to Defendant through two Purchase and Sale Agreements in 2015 and 2016 (together, "Agreement"). (*Id.*, ¶¶14, 15.) Before entering into the Agreement, Defendant knew that Plaintiff maintained a perfected security interest in Portage Electric's accounts receivable account by virtue of the UCC-1 Financing Statement. (*Id.*, ¶¶17-19.) In the alternative, Defendant was grossly negligent in failing to perform a UCC lien search. (*Id.*, ¶20.) Beginning in October 2015, Defendant repeatedly debited amounts from the checking account Portage Electric held at Plaintiff's bank in Indiana as a means of collecting Portage Electric's accounts receivable. (*Id.*, ¶16; DE #16-1, ¶31 (Affidavit of Daniel W. Moser ("Moser Aff."), attesting that Defendant caused Portage Electric's account in Indiana to be debited 258 times).)[1] In doing

---

[1] In its reply brief, Defendant argues that the Moser Affidavit contains several opinions, speculations and legal conclusions that should be disregarded. The Court notes that it is capable of sifting through the evidence and considering

so, Defendant confiscated $81,954 of Portage Electric's accounts receivable and assets in 2015, and $50,010 of Portage Electric's accounts receivable and assets in 2016. (DE #1, ¶¶16, 22, 23.) Portage Electric defaulted on its obligations to Plaintiff. (*Id.*, ¶21.) Defendant "acted willfully and/or with such gross negligence to indicate a wanton disregard" of Plaintiff's rights to Portage Electric's accounts receivable and assets. (*Id.*, ¶30.)

The Complaint asserts three tort claims against Defendant: conversion, breach of implied bailment, and unjust enrichment. (*See id.*, Counts I-III.) It alleges subject matter jurisdiction based on diversity of citizenship and an amount in controversy exceeding $75,000, and alleges that venue is appropriate based on 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district. (*Id.*, ¶¶4, 5.)

Defendant maintains that it has no offices or employees in the State of Indiana and does not advertise or solicit business in Indiana, but rather, relies upon third-party brokers to connect it with companies looking to sell future revenue. (DE #13-2, ¶14-18.) Defendant learned of Portage Electric from an independent third-party broker. (*Id.*, ¶19.) The broker contacted Defendant to inquire whether Defendant wished to purchase a portion of

---

it under the applicable federal rules and case law, giving each statement the credit to which it is due.

Portage Electric's future revenue. (*Id.*, ¶20.) The broker provided paperwork to Defendant, including the broker's application form, which contained information the broker had gathered about Portage Electric. (*Id.*, ¶21.) Portage Electric and Defendant entered into the Agreement, and Defendant transferred funds from its account in New York to Portage Electric's account in Indiana. (*Id.*, ¶¶22-26.) Defendant "used" a "third-party, independent transaction processing company" ("processor") based in California to debit the funds from Portage Electric's account at Plaintiff's bank in Indiana, route the funds through the processor in California, and deposit the funds in Defendant's account in New York. (*Id.*, ¶¶27-28.)

Personal Jurisdiction

Defendant moves for dismissal of the Complaint based on a lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Plaintiff bears the burden of establishing that personal jurisdiction exists, but because the issue is raised in a motion to dismiss, it need only make a *prima facie* showing of jurisdictional facts. *Felland v. Clifton,* 682 F.3d 665, 672 (7th Cir. 2012). Under the *prima facie* standard, the court "take[s] as true all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citation

omitted).  If a defendant submits evidence in opposition to a finding of personal jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 783 (7th Cir. 2003).

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Id.* at 779 (citation omitted).  The inquiry into whether an Indiana court would have jurisdiction over the defendant has two steps.  *Id.* First, the court must decide whether the Indiana long-arm statute subjects the defendant to *in personam* jurisdiction.  *Id.*  If so, then the court must determine whether the exercise of jurisdiction comports with federal due process requirements.  *Id.*  Indiana's long-arm statute, Trial Rule 4.4(A), provides in part that an Indiana court "may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Ind. Tr. R. 4.4(A).  Thus, the court has personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment.  For personal jurisdiction to be consistent with due process, a defendant must have established "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984) (internal quotations and citations omitted).

Plaintiff argues that the Court has personal jurisdiction under the doctrine of specific jurisdiction.[2] A court has specific jurisdiction over a nonresident defendant when "a controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 (citation omitted); *see N. Grain Marketing, LLC v. Greving,* 743 F.3d 487, 492 (7th Cir. 2014) ("To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction.") (citation and internal quotation marks omitted). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) (citation and internal quotation marks omitted). Specific jurisdiction is appropriate where (1) the defendant "purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state;" (2) "the alleged injury [arose] from the defendant's forum-related activities;" and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citations omitted). The purposeful-

---

[2] Personal jurisdiction may be either specific or general. Here, Plaintiff acknowledges that it is unaware of contacts sufficient to support general jurisdiction over Defendant.

direction requirement "ensure[s] that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Tamburo*, 601 F.3d at 702 (citations omitted).  Moreover, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985)).  "Jurisdiction cannot be avoided simply because a defendant did not physically enter the forum state." *Felland*, 682 F.3d at 673 (citation omitted).


Conduct "purposefully directed" at the forum state

"[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland*, 682 F.3d at 674.  The Complaint asserts the state law torts of conversion, breach of implied bailment, and unjust enrichment.  Where the plaintiff's claims are for intentional torts, "the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Tamburo*, 601 F.3d at 702 (citations omitted).  In this context, there are three requirements for personal jurisdiction: "(1) intentional conduct (or 'intentionally and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—

in the forum state." *Id.* at 703 (citations omitted). Plaintiff maintains that Defendant's tortious conduct was specifically directed at Indiana by entering into the Agreement with Portage Electric in Indiana to convert Plaintiff's collateral, and converting that collateral by withdrawing funds from Portage Electric's account in Indiana 258 times, thereby injuring Plaintiff in Indiana. Defendant allegedly knew that Plaintiff had a perfected first priority lien on Portage Electric's account by virtue of the UCC-1 Financing Statement, or was grossly negligent in failing to perform a UCC lien search.

Defendant argues that Plaintiff bases personal jurisdiction on the conduct of third parties, rather than Defendant. "[I]t must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Purdue*, 338 F.3d at 780 (citations omitted). According to Defendant, it did not purposefully direct conduct at Indiana because Portage Electric initiated contact with a third-party broker, who then contacted Defendant, for financing. The Agreement for financing is governed by the laws of the State of New York, and provides that disputes regarding the Agreement will be resolved in New York, indicating that Defendant intended to be subject only to the courts and laws of New York. Upon execution of the Agreement, Defendant transferred funds from its account in New York to Portage Electric's account at Plaintiff's bank in

Indiana. Defendant then "used" a third-party processor to debit funds from Portage Electric's account in Indiana and route the funds though the processor in California to Defendant's account in New York. (DE #13-2, ¶¶ 27, 28.) Defendant maintains that the actions of the third-party broker and third-party processor do not support specific jurisdiction over it.

Plaintiff contends that the third-party broker and third-party processor were acting as agents of Defendant, and therefore, their actions were not the unilateral activity of third parties. "The acts of an agent in a forum subject the principal to the personal jurisdiction of that forum state." *Commissioning Agents, Inc. v. Long,* 143 F. Supp. 3d 775, 793 (S.D. Ind. 2015) (citation omitted); *see* Ind. R. Trial P. 4.4(A) ("Any person or organization that is a nonresident of this state" submits to the jurisdiction of Indiana courts "as to any action arising from the following acts committed by him or her *or his or her agent*. . .") (emphasis added). "Whether there is an agency relationship is generally a question of fact." *Long*, 143 F. Supp. 3d at 793 (citations omitted). Here, Plaintiff notes the lack of information provided by Defendant regarding the broker and processor. Defendant's supporting affidavit describes the brokers with which it works as "independent contractors" and "not employees or representatives" of Defendant, and the particular broker at issue as "an independent, third-party broker." (DE #13-2, ¶¶15, 19.) The

10

affidavit describes the processor as "a third-party, independent transaction processing company based in California." (*Id.*, ¶27.) The affidavit does not provide any details regarding the identity of or Defendant's relationship with the broker or processor, or the location of the processor.

Given the lack of information provided by Defendant, Plaintiff argues that it is entitled to an inference that the brokers seek potential customers in every State, including Indiana, and that Defendant solicits customers in Indiana via an agent. But Defendant maintains that Portage Electric reached out to the broker, who then contacted Defendant. Plaintiff asserts that Portage Electric's initiating contact with Defendant "defies practicality" because it can be presumed that Defendant retains a broker to procure clients outside of its home state. (DE #16 at 6.) However, Plaintiff does not provide evidence supporting this assertion. *See Purdue*, 338 F.3d at 783 (when a defendant resists jurisdiction, the plaintiff must present evidence to support allegations that purportedly support jurisdiction). Even if the broker was acting as Defendant's agent, Portage Electric's initiation of the contact with the broker/Defendant does not demonstrate that Defendant purposefully directed conduct at Indiana. *See Diversity Max, LLC v. David Waller, W2 Ltd.*, No. 114CV02066RLYMPB, 2016 WL 1270205, at *4 (S.D. Ind. Mar. 31, 2016) (finding no personal jurisdiction where Defendants did not

facilitate the initial contact with plaintiff).  The Court finds
that the actions of the broker are insufficient to convey personal
jurisdiction over Defendant.

The conduct of Defendant's processor is a closer call.
Plaintiff proffers the Agreement, as well as an automated clearing
house ("ACH") authorization form which states that Portage
Electric "sold certain of its accounts and receivables" to
Defendant pursuant to the Agreement, and "authorizes [Defendant]
to take payment for services contemplated by the Agreement by ACH
and initiate, if necessary, credits or debits to the account" of
Portage Electric at Plaintiff's bank.  (DE #16-1 at 58.)  It also
proffers an "Authorization Agreement for Electronic Check
Payments" between Defendant and Portage Electric "authorizing
[Defendant] to initiate recurring (debit or credit) entries to
demand deposit account at [Plaintiff's bank]."  (*Id*. at 59
(together with the ACH authorization form, "Authorization
Agreements").)  Plaintiff argues that Defendant's use of a
processor to effectuate these transfers is of no consequence
because the processor could not have acted independently from
Defendant's control.  It relies upon the affidavit of Plaintiff's
Loan Portfolio Manager, who attests that, based on over 20 years
of banking experience, Defendant would have been required to enter
into an agreement with the processor authorizing the processor to
act as Defendant's "agent with respect to such ACH or electronic

check debit transactions, as it is [Defendant] who ultimately receives the debited funds." (DE #16-1, ¶33.)

As it stands, the record includes an affidavit from Defendant attesting that the processor was independent, and an affidavit from Plaintiff maintaining that the processor was Defendant's agent, based in part on the Authorization Agreements. Thus, whether the processor was acting as Defendant's agent is a dispute of fact. Because Plaintiff is entitled to a favorable resolution of disputed relevant facts, the Court finds that the processor was acting as Defendant's agent when it repeatedly debited funds from Portage Electric's account at Plaintiff's bank in Indiana.

Defendant also contends that Plaintiff cannot show that its actions were taken with the express purpose of causing injury to anyone in Indiana. It allegedly entered into the Agreement to benefit Portage Electric and itself, rather than for any potential injury to Portage Electric or Plaintiff. Defendant maintains that it did not know that Plaintiff would be injured in Indiana because it could not foresee any potential repercussions to Plaintiff by entering the Agreement. However, the Complaint alleges that Defendant had "actual knowledge" of Plaintiff's properly perfected first-priority lien upon Portage Electric's accounts and accounts receivable prior to entering into the Agreement, and "acted willfully" in converting Plaintiff's rights to Portage Electric's accounts receivable. (DE #1, ¶19, ¶30.) Taking the allegations

in the Complaint as true, Defendant purposefully directed its conduct at the forum state when it willfully converted Plaintiff's perfected security interest in Portage Electric's accounts receivable in Indiana. *See generally Long,* 143 F. Supp. 3d at 792 (noting that cases found personal jurisdiction where "the defendants' forum state activities occurred more than once and were clearly made in furtherance of the alleged wrongdoing").

Injury "arises out of" Defendant's contacts with Indiana

Plaintiff's injury must "arise out of" or "relate to" the conduct that comprises the Defendant's contacts with the forum. *Tamburo*, 601 F.3d at 708. Plaintiff maintains that Defendant's execution of the Agreement with an Indiana company (Portage Electric) contemplated the conversion of Plaintiff's right to Portage Electric's accounts receivable in Indiana, and established Defendant's authority to direct its processor to convert the funds in Portage Electric's bank account. As explained above, the disputed issue of fact as to whether the processor was acting as Defendant's agent must be resolved in Plaintiff's favor, and the Court has concluded that Defendant aimed its allegedly tortious conduct at Indiana to cause Plaintiff injury there. These contacts with the forum state are "the cause in fact and the legal cause" of Plaintiff's injury. *Tamburo*, 601 F.3d at 709. Therefore, Plaintiff's injury arose out of Defendant's contacts with Indiana.

<u>Traditional notions of fair play and substantial justice</u>

Finally, the Court must determine whether the exercise of personal jurisdiction over Defendant "would offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 709 (citation omitted). "The following factors are relevant: the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *Burger King*, 471 U.S. at 477) (internal quotation marks omitted).

Plaintiff is an Indiana state savings bank with its principal place of business in Indiana and allegedly was injured in Indiana. Indiana "has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Id.* Nonparty Portage Electric, whose Agreement with Defendant led to the alleged conversion of accounts receivable, is also located in Indiana. Defendant does not argue that remaining in Indiana would offend traditional notions of fair play and substantial justice. While Defendant "may face some burden in being forced to defend an action in Indiana, [its] burden is no different than any

out-of-state defendant and there is no suggestion that [its] hardship will be any greater than that routinely tolerated by courts exercising specific jurisdiction over non-residents." *Long*, 143 F. Supp. 3d at 795.

Because Defendant's alleged tortious behavior was purposefully directed at Indiana, Plaintiff's injuries arose out of Defendant's tortious conduct with Indiana, and exercising personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice, the Court finds that it has personal jurisdiction over Defendant.


Improper Venue

As an alternative to dismissal for lack of personal jurisdiction, Defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(3). Rule 12(b)(3) provides that a party may move to dismiss an action that is filed in an improper venue. Fed. R. Civ. P. 12(b)(3). On a motion to dismiss for improper venue, the court construes all facts and draws reasonable inferences in favor of the plaintiff. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). Plaintiff asserts that venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2). Section 1391(b)(2) provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" 28 U.S.C. §

1391(b)(2).  The test "is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in a particular district." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.,* 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015).  Here, Defendant allegedly (1) entered into a financing agreement with an Indiana company, Portage Electric; (2) transferred funds into Portage Electric's account in Munster, Indiana; and (3) used a processor to debit funds from Portage Electric's account, which was subject to Plaintiff's lien; thereby (4) injuring Plaintiff in Munster, Indiana.  Because a substantial portion of the activities giving rise to Plaintiff's claims of occurred in this district, the Court finds that venue is proper under Section 1391(a)(2).

Transfer of Venue

Defendant also moves for transfer of venue to the United States District Court for the Eastern District of New York under 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a).  Section 1406(a) provides that a district court may transfer "a case laying venue in the wrong division or district" to a district in which it could have been brought "if it be in the interest of justice."  28 U.S.C. § 1406(a).  For the reasons discussed above, venue in the Northern

of District Indiana is proper, and accordingly, transfer under Section 1406(a) is not appropriate in this case.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). Under Section 1404(a), the moving party must establish that (1) venue is proper in the transferor court and transferee court, and (2) the transfer will serve the convenience of the parties and witnesses and is in the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986); *Research Automation Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The Court has determined that venue is proper in this district. Venue is also proper in the Eastern District of New York because Defendant is a limited liability company in the County of Kings, New York. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides").

"When deciding whether to transfer an action based on convenience, courts consider several factors, including the convenience of the parties; the convenience of the witnesses; the location of material events and material evidence; and the interests of justice." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 985 (S.D. Ind. 2016) (citations omitted). "[C]ourts

18

have broad discretion when weighing the factors and deciding whether to grant or deny a motion to transfer under § 1404(a)." *Id.* (citing *Coffey*, 796 F.2d at 219). "The party moving for transfer has the burden to establish, by reference to particular circumstances, that the transferee forum is *clearly* more convenient than the transferor forum." *Id.* at 986 (citations omitted; emphasis in original). "[T]ransfer is not justified when doing so would merely shift the inconvenience of the litigation from one party to the other." *Id.* (citations omitted).

Here, Plaintiff is an Indiana state savings bank with its principal place of business in Munster, Indiana. "[T]here is typically a strong presumption in favor of the plaintiff's choice of forum," particularly when the forum is the plaintiff's home forum. *Id.* (citations omitted); *see In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed"). Defendant is located in New York and argues that it would be extraordinarily burdensome to litigate in Indiana because its (unidentified) potential witnesses are located in and around New York. "[C]ourts generally assign little weight to the location of employee-witnesses because they are usually within the control of the parties and are likely to appear voluntarily in either forum." *Long*, 187 F. Supp. 3d at 988. Defendant does not claim that it is in a weaker financial position

than Plaintiff or is unable to bear the expense of travel.  Given that Indiana is Plaintiff's home forum, and Defendant has not overcome that presumption, the Court finds that the convenience of the parties factor favors Plaintiff.

As for the convenience of non-party witnesses, nonparty Portage Electric's principal place of business is in Portage, Indiana.  The only other potential non-party witnesses identified by Defendant are the processor in California, and the broker, whose location is not disclosed.  Plaintiff contends that the testimony of the broker and processor is not material to its claims against Defendant, and these witnesses may not be necessary.  Defendant fails to adequately assert what testimony these witnesses might provide, and whether these witnesses would not be willing to travel to Indiana.  Without more, Defendant fails to establish that the convenience of non-party witnesses factor clearly favors transfer to the Eastern District of New York.  *See id.* at 988–89.

The Court also considers the location of material events and evidence.  Portage Electric's account, over which Plaintiff allegedly has a perfected security interest, and from which Defendant allegedly converted funds, is located in Plaintiff's bank in Munster, Indiana.  While the Agreement between Defendant and Portage Electric is governed by New York law, and provides that disputes regarding the Agreement will be resolved in New York, Plaintiff is not a party to the Agreement.  Plaintiff's tort claims

are based on the transfers of funds from Portage Electric's account, which occurred in Indiana. Thus, the Court finds that this factor leans in favor of Plaintiff.

Finally, the Court weighs whether the interests of justice would be better served in either district. The interest of justice "relates to the efficient administration of the court system rather than the merits of the underlying dispute." *Id*. at 990 (citing *Coffey*, 796 F.2d at 220-21). Defendant maintains that both this Court and the Eastern District of New York can offer effective and convenient relief to Plaintiff. Plaintiff's claims are based on Indiana tort law. As Defendant acknowledges, "in a diversity action it is considered advantageous to have a federal judge who is familiar with the applicable state law try the case." (DE #13-1 at 12 (citing *Coffey*, 796 F.2d at 221).) Thus, the Court finds that the interests of justice factor slightly favors Plaintiff.

Defendant has not met its burden of demonstrating that the Eastern District of New York is clearly a more convenient forum than the Northern District of Indiana. Because transferring this case would impermissibly shift the inconvenience from Defendant to Plaintiff, Defendant's motion for transfer of venue under Section 1404(a) is denied.

CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (DE #13) is **DENIED**.


DATED:  September 28, 2017          /s/RUDY LOZANO, Judge
                                    United States District Court